## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**METRO SERVICE GROUP, INC.**                                  **CIVIL ACTION**

**VERSUS**                                                                    **CASE NO. 21-1136**

**WASTE CONNECTIONS BAYOU, INC.**                    **SECTION: "G"**

## ORDER AND REASONS

In this litigation, Plaintiff Metro Service Group, Inc., ("Plaintiff") brings claims against Defendant Waste Connections Bayou, Inc. ("Defendant") for breach of contract, wrongful termination, and unjust enrichment related to a subcontract between the parties for waste removal.[1] Defendant brings a counterclaim against Plaintiff to recover attorneys' fees arising out of these proceedings.[2] Before the Court is Defendant's "Partial Motion to Dismiss Pursuant to Fed. R. Civ. Proc. 12(b)(6) for Failure to State a Claim."[3] Considering the motion, the memoranda in support and in opposition, the record, the parties' statements at oral argument, and the applicable law, the Court grants the motion.

## I. Background

On May 5, 2021, Plaintiff filed a "Petition for Breach of Contract and for Damages" against Defendant in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana.[4] On

---

[1] Rec. Doc. 1-2 at 5–6.

[2] Rec. Doc. 4.

[3] Rec Doc. 17.

[4] Rec. Doc. 1-1.

June 10, 2021, Defendant removed the case to this Court based on diversity jurisdiction.[5] Plaintiff alleges that Defendant entered into a "Residential Garbage Collection Contract" (the "Prime Contract") on November 5, 2008 with Jefferson Parish for the collection of waste.[6] Plaintiff contends that Defendant then entered into a subcontract agreement (the "Subcontract") with Plaintiff on June 17, 2009, under which Plaintiff would pick up and haul waste from designated "Citizen Drop-off Centers" and deliver them to the landfill designated under the Prime Contract.[7]

Under the Subcontract, Plaintiff alleges that it was to receive an initial amount of $165.00 for each truckload of waste.[8] Plaintiff further alleges that it worked with Defendant to obtain a ten-year extension of the Prime Contract with Jefferson Parish, and the Prime Contract was ultimately extended to 2024.[9] Plaintiff contends that "[p]er the negotiations between the parties, and based upon the terms reached with the Parish, the $165.00 base service amount . . . was to increase to $225.00 per load upon the start of the 10-year contract extension."[10] Furthermore, Plaintiff contends that it also should have received increases in pay based on changes to the Consumer Price Index ("CPI") and/or fuel increases, equal to the CPI and/or fuel increases received by Defendant under the Prime Contract.[11] Plaintiff avers that although Defendant has received increased service fees each year, they have "failed to remit/pass along to [Plaintiff] any such CPI or fuel increase,"

---

[5] Rec. Doc. 1.

[6] Rec. Doc. 1-2 at 2.

[7] *Id.*

[8] *Id.* at 3.

[9] *Id.*

[10] *Id.*

[11] *Id.* at 4.

and instead "continue to remit only the original base amount reflected in the Subcontract."[12] Plaintiff further contends that "[f]ollowing [Plaintiff's] amicable demands, [Defendant] failed to follow the required notice provisions set forth in the Subcontract, and improperly terminated" the Subcontract, causing Plaintiff to suffer additional damages.[13]

As a result of the alleged breach of contract, Plaintiff claims it has suffered damages in the amount of approximately $1,364,756.65, with an additional "significant amount" of damages due to lost profits.[14] Accordingly, Plaintiff asserts claims against Defendant for: (1) breach of contract; (2) wrongful termination; and (3) unjust enrichment.[15] Defendant has filed an answer as well as a counterclaim for recovery of attorneys' fees arising out of these proceedings.[16]

On September 28, 2021, Defendant filed the instant motion to dismiss any claims "for compensation allegedly due and owing to Plaintiff for services rendered prior to May 5, 2018."[17] On October 25, 2021, Plaintiff filed an opposition.[18] On October 28, 2021, Defendant filed a reply.[19] The Court heard oral argument on the motion on November 3, 2021.[20]

---

[12] *Id.*

[13] *Id.*

[14] *Id.* at 4–5.

[15] *Id.* at 5–6.

[16] Rec. Doc. 4.

[17] Rec. Doc. 17 at 1.

[18] Rec. Doc. 21.

[19] Rec. Doc. 25.

[20] Rec. Doc. 26.

## II. Parties' Arguments

### A.    *Defendant's Arguments in Support of the Motion*

On September 28, 2021, Defendant filed the instant partial motion to dismiss for failure to state a claim.[21]  Defendant makes two alternative arguments that some of Plaintiff's claims have prescribed.  First, Defendant argues that Plaintiff's claims are for "compensation for services rendered," and thus Louisiana Civil Code article 3494's ("article 3494") three-year prescriptive period applies.[22]  As a result, Defendant contends that all of Plaintiff's claims arising prior to May 5, 2018 have prescribed.[23]  Alternatively, Defendant contends that Plaintiff's claims fall under Louisiana Civil Code article 3499's ("article 3499") ten-year prescriptive period for breach of contract claims, and that some of Plaintiff's claims fall outside of this period.[24]

Defendant primarily argues that a three-year prescriptive period applies, rendering all of Plaintiff's claims for recovery for compensation prior to May 5, 2018 prescribed.[25]  Defendant points out that article 3499 provides a prescriptive period of ten years for all "personal action[s]" "unless otherwise provided by legislation."[26]  Nevertheless, Defendant contends that article 3494 is an exception to article 3499 and provides a prescriptive period for actions involving the recovery of compensation for services rendered.[27]  Accordingly, Defendant asserts that the three-year prescriptive period under article 3494 should apply, rather than the ten-year prescriptive period

---

[21] Rec. Doc. 17.

[22] Rec. Doc. 17-1 at 8–12.

[23] *Id.*

[24] *Id.* at 12–16.

[25] *Id.* at 8–12.

[26] *Id.* at 9.

[27] *Id.*

under article 3499.[28]

Defendant contends that the Court should look to the "character of the action" identified in the Petition to determine the applicable prescriptive period.[29] Defendant points out that Plaintiff's complaint "explicitly alleges claims to be 'compensated' . . . for 'services' it 'rendered' to Defendant under the Subcontract."[30] Defendant cites *Minor v. Monroe Surgical Hosp., LLC*[31] for the proposition that "even if parties enter into a written contract, the shorter prescriptive period of Article 3494 controls if the contract in question sets forth any of the subspecies of agreements identified in Article 3494."[32] Because article 3494 includes "action[s] for the recovery of compensation for services rendered," and that is "the exact cause of action" Plaintiff alleges, Defendant contends that the three-year prescriptive period applies.[33] Because Plaintiff filed the Petition on May 5, 2021, Defendant asserts that any claims Plaintiff has asserted for recovery of compensation for services it rendered to Defendant prior to May 5, 2018 have prescribed.[34]

Alternatively, Defendant asserts that if the Court finds Plaintiff's claims to be cognizable as claims for breach of contract, they are still subject to the ten-year prescriptive period for personal actions under article 3499.[35] Defendant argues that the Petition "essentially alleges" that the

---

[28] *Id.* at 10.

[29] *Id.* at 9.

[30] *Id.* at 11.

[31] *Minor v. Monroe Surgical Hosp., LLC*, 49,367 (La.App. 2 Cir. 11/19/14); 154 So. 3d 665.

[32] Rec. Doc. 17-1 at 11.

[33] *Id.*

[34] *Id.* at 11–12.

[35] *Id.* at 12.

Subcontract entitled Plaintiff to an increase in compensation beginning on January 1, 2010.[36] Defendant avers that, if Defendant owed additional amounts due to the CPI increase starting on January 1, 2010, Defendant would have breached that obligation each time it remitted payment for the monthly invoices it received from Plaintiff. Therefore, Defendant asserts that "[a]ny such payment which was exigible prior to [sic] May 5, 2011 (ten years prior to Plaintiff filing suit), is therefore prescribed."[37]

**B.      *Plaintiff's Opposition to the Motion to Dismiss***

In opposition, Plaintiff asserts that Defendant committed two distinct contractual breaches: (1) the failure to send Plaintiff increases in the CPI and (2) the failure to pay Plaintiff an increased per load price.[38] Plaintiff argues that neither claim has prescribed.

**1.      Defendant's Failure to Pay Increases in the CPI**

Plaintiff contends that the claim regarding Defendant's failure to pay increases in the CPI is a breach of contract claim, rather than a claim for "the recovery of compensation for services rendered," and is therefore subject to the ten-year prescriptive period under article 3494.[39] Plaintiff asserts that it is "not claiming that [Defendant] did not compensate them for the services invoiced," but rather that Defendant "breached its obligated duty" to inform Plaintiff of the CPI increases Defendant received and pass them along to Plaintiff.[40] Thus, Plaintiff asserts that its claim is one for breach of contract rather than for recovery of compensation for services rendered and is subject

---

[36] *Id.* at 14.

[37] *Id.*

[38] Rec. Doc. 21 at 1.

[39] *Id.* at 8.

[40] *Id.*

6

to the ten-year prescriptive period.[41]

Next, Plaintiff contends that the ten-year prescriptive period did not begin to run until Plaintiff "had sufficient information" to avail itself of its cause of action against Defendant.[42] Plaintiff contends that, under the doctrine of *contra non valentem*, the prescriptive period did not begin to run until Plaintiff knew or reasonably should have known of its claim against Defendant.[43] Plaintiff further contends that it had no duty to inquire about or anticipate CPI increases, and that instead Defendant had an obligation to inform Plaintiff of the CPI increases.[44] Plaintiff argues that Defendant's "failure to disclose critical information regarding the CPI increases" was fraudulent, and "effectally prevented [Plaintiff] from availing itself of its cause of action concerning the CPI increases."[45]

### 2.  Defendant's Failure to Pay an Increased Price Per Load.

With respect to Defendant's alleged failure to pay an increased price per load of waste hauled, Plaintiff contends that there is a disputed question of fact as to the amount of compensation owed under the contract.[46] Plaintiff contends that the new terms discussed were never reduced to writing after the ten-year extension of Defendant's contract with Jefferson Parish.[47] Plaintiff asserts that this dispute prevents the Court from evaluating questions of prescription.[48] Plaintiff

---

[41] *Id.*

[42] *Id.* at 9

[43] *Id.*

[44] *Id.* at 11.

[45] *Id.* at 11.

[46] *Id.* at 12.

[47] *Id.*

[48] *Id.* at 15.

contends that "discovery is required to establish the contractual terms between the parties under the 10-year contract extension, including the price," and that determining what "prescriptive period applies without this information would be premature and unfair to [Plaintiff]."[49] Accordingly, Plaintiff argues that the Motion must be denied.[50]

### C.   Defendant's Arguments in Further Support of the Motion

In the reply brief, Defendant first contends that the doctrine of *contra non valentum* does not apply because Defendant did not conceal the CPI adjustments it received from Jefferson Parish.[51] Defendant points out that the Prime Contract is incorporated into the Subcontract, and the terms of the Prime Contract put Plaintiff on notice that "Defendant and Plaintiff were both entitled to annual CPI adjustments beginning on January 1, 2010."[52] Defendant further contends that had Plaintiff made a "reasonabl[e] inquiry" into the "documents governing the parties' relationship and any collateral agreements that are explicitly adopted . . . Plaintiff would have known prior to January 1, 2010, that the first price escalation would be determined as of that date."[53] Defendant further argues that Plaintiff's attempted application of the *contra non valentum* doctrine "will create exceptions that will swallow the law of liberative prescription whole."[54]

Defendant further argues that any dispute over the exact price point for the "per load" rate has no bearing on whether the ten or three-year prescriptive period is applicable to Plaintiff's

---

[49] *Id.*

[50] *Id.*

[51] Rec. Doc. 22-2 at 2.

[52] *Id.* at 4.

[53] *Id.* at 6.

[54] *Id.*

claims.[55] Defendant contends that, even if Plaintiff's claim is viewed as one for unjust enrichment, a claim for compensation for services rendered is subject to the three-year prescriptive period "regardless of how the party characterizes it."[56]

Lastly, Defendant contends that Plaintiff has conceded that some of its claims are prescribed.[57] Defendant points out that Plaintiff did not address Defendant's argument that Plaintiff's claims arose on January 1, 2010, and thus even under the ten-year prescriptive period, Plaintiff's claims for services rendered prior to May 5, 2011 are prescribed.[58] Accordingly, Defendant urges that even under "the most generous interpretation of the law of prescription," any claims for services Plaintiff rendered prior to May 5, 2011 are prescribed.[59]

## III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[60] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[61] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."[62]

---

[55] *Id.* at 7.

[56] *Id.* at 8.

[57] *Id.* at 9.

[58] *Id.*

[59] *Id.*

[60] Fed. R. Civ. P. 12(b)(6).

[61] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[62] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).

The "[f]actual allegations must be enough to raise a right to relief above the speculative level."[63] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[64] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[65]

Although a court must accept all "well-pleaded facts" as true, a court need not accept legal conclusions as true.[66] "[L]egal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations."[67] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[68] If the factual allegations are insufficient to raise a right to relief above the speculative level, or an "insuperable" bar to relief exists, the claim must be dismissed."[69]

A court considering a motion to dismiss "must limit itself to the contents of the pleadings, including attachments thereto."[70] Attachments to a motion to dismiss are, however, "considered part of the pleadings" if "they are referred to in the plaintiff's complaint and are central to her

---

[63] *Twombly*, 550 U.S. at 555. Put another way, a plaintiff must plead facts that allow the court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

[64] *Iqbal*, 556 U.S. at 678.

[65] *Id.*

[66] *Id.* at 677–78.

[67] *Id.* at 679.

[68] *Id.* at 678.

[69] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[70] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

claim."[71]  "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the

suit, and the court in making the elementary determination of whether a claim has been stated."[72]

## IV. Analysis

In the instant motion, Defendant urges the Court to dismiss all of Plaintiff's claims that

arose prior to May 5, 2018, because they have prescribed. The Fifth Circuit has instructed that

a Rule 12(b)(6) motion to dismiss on the basis of prescription should not be granted unless "it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief."[73] When presented with a state law claim, "federal courts apply state

statutes of limitations and related state law governing tolling of the limitation period."[74] "[U]nder

Louisiana jurisprudence, prescriptive statutes are to be strictly construed against prescription and

in favor of the obligation sought to be extinguished; of two possible constructions, that which

favors maintaining, as opposed to barring, an action should be adopted."[75] However, "that does

not mean that every prescriptive statute must be interpreted in order to avoid prescription."[76]

Furthermore, the party pleading prescription has the burden of proving prescription.[77]

Nevertheless, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff

---

[71] *Id.* at 498–99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)) (internal quotation marks omitted).

[72] *Carter v. Target Corp.*, 541 F. App'x 413, 416–17 (5th Cir. 2013) (quoting *Collins*, 224 F.3d at 498–99).

[73] *Abdul-Alim Amin v. Universal Life Ins. Co. of Memphis, Tenn.*, 706 F.2d 638, 640 (5th Cir. 1983).

[74] *Hensgens v. Deere & Co.*, 869 F.2d 879, 880 (1989).

[75] *Bustamento v. Tucker*, No. 92-C-0523 (La. 10/19/92), 607 So. 2d 532, 537.

[76] *Turner v. Willis Knighton Medical Center*, Nos. 2012-C-0703, 2012-C-0742 (La. 12/4/12), 108 So. 3d 60, 65.

[77] *Carter v. Haygood*, No. 2004-0646 (La. 1/19/05), 892 So.2d 1261, 1267.

to show the action has not prescribed.[78]

When determining the applicable prescriptive period, Louisiana courts look to "the character of an action disclosed in the pleadings."[79] Louisiana Civil Code article 3499 provides that "[u]nless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years."[80] Comment (b) of that statute explains that the ten-year prescriptive period applies to personal actions "in the absence of a legislative provision that either establishes a shorter or longer period or declares the action to be imprescriptible," and that "[s]horter prescriptive periods are established in" articles 3492 through 3498.[81] One such shorter prescriptive period is found in article 3494, which provides:

> The following actions are subject to a liberative prescription of three years:
>
> (1) *An action for the recovery of compensation for services rendered*, including payment of salaries, wages, commissions, professional fees, fees and emoluments of public officials, freight, passage, money, lodging, and board;
> (2) An action for arrearages of rent and annuities;
> (3) An action on money lent;
> (4) An action on an open account; and
> (5) An action to recover underpayments or overpayments of royalties from the production of minerals, provided that nothing herein applies to any payments, rent, or royalties derived from state-owned properties.[82]

In *Starns v. Emmons*, the Louisiana Supreme Court explained that the ten-year prescriptive period of article 3499 does not always apply whenever a contract is involved because "[a]ll of the

---

[78] *Id.*

[79] *Starns v. Emmons*, No. 88-C-1575 (La. 1/30/89); 538 So. 2d 275, 277.

[80] La. Civ. Code art. 3499.

[81] *Id.*

[82] La. Civ. Code. Art. 3494 (emphasis added).

actions covered by the provisions of [3494] essentially arise from contractual relationships."[83] Instead, the actions described in article 3494 are "exceptions to the general rule stated in article 3499 that a personal action prescribes in ten years."[84] Thus, where a plaintiff seeks to recover unpaid compensation for services rendered under a contract, the Louisiana Supreme Court has held that the three-year prescriptive period of 3494 applies.[85]

Defendant argues that all of Plaintiff's claims are seeking compensation for services rendered, and thus Plaintiff's claims that arose prior to May 5, 2018 are prescribed by article 3494's three-year prescriptive period. Alternatively, if the Court finds instead that article 3499 applies, Defendant contends that Plaintiff's claims that arose prior to May 5, 2011 are prescribed by article 3499's ten-year prescriptive period. Plaintiff, on the other hand, argues that there are two distinct breaches at issue: (1) the failure to send Plaintiff increases in the CPI and (2) the failure to pay Plaintiff an increased per load price.[86] Plaintiff contends that both of these claims are subject to the ten-year prescriptive period, and neither claim has prescribed. At oral argument, the parties agreed that the issues presented in this motion involve a dispute of law, rather than a factual dispute.

## A.   *CPI Increase Claim*

Plaintiff contends that Defendant failed to pay additional money owed under the Subcontract based on fluctuations in the CPI. The Subcontract between Plaintiff and Defendant includes the following clause:

---

[83] *Starns v. Emmons*, No. 88-C-1575 (La. 1/30/89); 538 So. 2d 275, 278.

[84] *Id.*

[85] *Grabert v. Iberia Parish School Bd.*, No. 93-2715 (La. 7/5/94); 638 So. 2d 645, 647.

[86] Rec. Doc. 21 at 1.

c. <u>CPI & Fuel Increase</u>. Subcontractor will receive equal CPI or fuel increases received by Contractor under the Contract, if any.[87]

Defendant contends that the three-year prescriptive period applies because Plaintiff's action is for "the recovery of compensation for services rendered" under Article 3494.[88] Although Plaintiff contends that they have not received these increases, Plaintiff's opposition to the Motion states that its position is not that Defendant failed to compensate them for services rendered, but rather that Defendant breached its obligation under this clause.[89] Plaintiff's argument fails for two reasons.

First, although Plaintiff may characterize its claim as one for breach of a contract, the CPI provision is part of the compensation that Plaintiff admits it is entitled to receive under the terms of the contract.[90] It follows that Plaintiff's suit to recover the amount of the CPI increases is an action to recover compensation for services rendered. In other words, although Defendant has provided some compensation for the services rendered by Plaintiff, the alleged failure to pay the CPI increases is an allegation that Defendant has not paid all of the compensation due for the services Plaintiff rendered under the contract. Thus, Plaintiff's claim is one for the "recovery of compensation for services rendered" and is subject to the three-year prescriptive period of article 3494.

Second, the ten-year prescriptive period does not apply to all claims involving breaches of contract. As discussed, the ten-year prescriptive period for personal actions applies "[u]nless

---

[87] Rec. Doc. 4–2 at 2.

[88] Rec. Doc. 17–1 at 11.

[89] Rec. Doc. 21 at 8.

[90] *Id.* at 4.

otherwise provided by legislation."[91]   In *Grabert v. Iberia Parish School Bd.*, the Supreme Court of Louisiana explained that the prescriptive period for a suit seeking compensation for services rendered "is otherwise provided for in article 3494," which establishes a three-year prescriptive period.[92] In that case, tenured employees who were subject to employment contracts with the Iberia Parish School Board filed a lawsuit alleging that the Board breached their respective contracts by paying them less than they were due under the appropriate salary index.[93] The plaintiffs argued that the ten-year prescriptive period applied because of a distinction between an action for breach of contract and an action for past due wages.[94] The Supreme Court of Louisiana rejected that argument, finding that the action was "plainly for salary or wages past due under the allegedly appropriate salary index."[95] The Court went on to explain that the claim that wages were less than what was owed "is not something different because it arises out of a breach of contract. The contract breached made provisions for the very wages sought."[96] Accordingly, the Court held applicable the three-year prescriptive period in article 3494, which applies to actions "for the recovery of compensation for services rendered, including payment of salaries [or] wages."[97]

*Grabert* is directly applicable to the circumstances of this case. As in *Grabert*, the "character of the action" here is that Plaintiff alleges it was paid less than what was owed under the contract. Plaintiff contends that the contract between Plaintiff and Defendant required

---

[91] La. Civ. Code art. 3499.

[92] No. 92-2715 (La. 7/5/94) 638 So.2d 645, 657.

[93] *Id.* at 646.

[94] *Id.*

[95] *Id.* at 647.

[96] *Id.*

[97] La. Civ. Code. Art. 3494.

Defendant to pay Plaintiff the value of any CPI increases, and that Defendant failed to do so. Although Plaintiff claims that the action is for a breach of contract rather than recovery of compensation for services rendered, as in *Grabert*, the contract that Defendant allegedly breached "made provisions for the very [CPI increases] sought."[98] Thus, Plaintiff's claim regarding the CPI increases is a claim for "recovery of compensation for services rendered," and is subject to 3494's three-year prescriptive period.

Indeed, at oral argument, Plaintiff conceded that the subcontract was a service contract. Plaintiff further conceded that, at least with respect to the base price per load, its claim was for services rendered. However, for reasons explained more fully below, both the claim regarding the CPI increase and the claim regarding the base price are claims seeking "compensation for services rendered."[99] Accordingly, the three-year prescriptive period applies.

Having found that Plaintiff's claim regarding the CPI increase is subject to the three-year prescriptive period, the Court must determine when that period began to run against Plaintiff. Because the state court petition was filed on May 5, 2021, Defendant asserts that Plaintiff's claims for compensation for services rendered to Defendant prior to May 5, 2018 have prescribed.[100] Plaintiff, however, contends that under the doctrine of *contra non valentem*, the period did not begin to run until Plaintiff knew or should have known of the cause of action against Defendant.[101] Plaintiff suggested that it did not know, and could not have known, that it had a cause of action against Defendant until Defendant terminated the contract and Plaintiff discovered, by submitting

---

[98] *See Grabert*, 638 So. 2d at 657.

[99] La. Civ. Code. 3494.

[100] Rec. Doc 17–1 at 11–12.

[101] Rec Doc 21 at 9.

16

a public records request, that Defendant received CPI increases from Jefferson Parish but failed to pass those increases along to Plaintiff.[102]

Under the doctrine of *contra non valentem*, the applicable prescriptive period may be interrupted where one of four factual circumstances are present:

(1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;

(2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;

(3) where the [defendant] himself has done some act effectually to prevent the [Plaintiff] from availing himself of his cause of action; or

(4) Where the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant.[103]

Plaintiff argues that the third category applies because Defendant's failure to disclose the fact that it was receiving CPI increases from Jefferson Parish was fraudulent, and "effectually prevented [Plaintiff] from availing itself of its cause of action concerning the CPI increases."[104] The Louisiana Supreme Court has stated that the third category is implicated only when "(1) the defendant engages in conduct which rises to the level of concealment, misrepresentation, fraud or ill practice; (2) the defendant's actions effectually prevented the plaintiff from pursuing a cause of action; and (3) the plaintiff must have been reasonable in his or her inaction."[105] In other words, the doctrine "will not exempt a plaintiff's claim from running if his ignorance is attributable to his own willfulness, neglect, or unreasonableness."[106]

---

[102] Rec. Doc. 21. at 11.

[103] *Renfroe v. State ex. Rel. Dept. of Transp. and Dev.*, 2001-1646 (La. 2/26/02); 809 So. 2d 947, 953.

[104] Rec. Doc. 21 at 11.

[105] *Marin v. Exxon Mobil Corp.*, 09-2368, p. 23 (La. 10/19/10); 48 So. 3d 234, 252 (internal citations omitted).

[106] *Able v. City of New Orleans*, 14-0186, p. 10–12 (La. App. 4 Cir. 9/17/14); 150 So. 3d 361, 368 (quoting *Dominion Exploration & Prod., Inc. v. Waters*, 07-0386, p. 14 (La. App. 4 Cir. 11/14/07); 972 So. 2d 350, 360)

Even assuming that Defendant's failure to disclose the CPI increases rises to the level of concealment, misrepresentation, fraud, or ill practice, Plaintiff cannot meet the other two requirements necessary to invoke the third category of *contra non valentem*.

Plaintiff contends that Defendant was required under the contract to "send CPI increases to [Plaintiff] to the same extent [Defendant] received such payments from Jefferson Parish for the work [Plaintiff] performed, 'if any' such payments were made."[107] Plaintiff contends that it was under no obligation to "inquire or anticipate CPI increases," and thus Defendant's failure to disclose the payments received based on the CPI increases "effectually prevented [Plaintiff] from availing itself of its cause of action" against Defendant.[108] Plaintiff suggests that it could not have known of the cause of action until Defendant terminated the contract and Plaintiff discovered, by submitting a public records request, that Defendant received CPI increases from Jefferson Parish but failed to pass those increases along to Plaintiff.[109]

The Court finds this argument unavailing. At oral argument, Plaintiff conceded that the Subcontract explicitly incorporates the terms of the Prime Contract.[110] The terms of the Prime Contract gave Plaintiff the notice necessary to avail itself of the cause of action. The Prime Contract provides as follows:

> The service fees, with the exception of the fuel component, which is stipulated to be $2.04, payable to IESI *shall be adjusted* upward or downward to reflect changes in the cost of doing business, as measured by fluctuation in the CPI using the then

---

[107] Rec. Doc. 21 at 2.

[108] *Id.* at 11.

[109] *Id.*

[110] Rec. Doc. 4–2. The first paragraph of the Subcontract states:

> WHEREAS, Contractor has entered into a Residential Garbage Collection Contract with Jefferson Parish, Louisiana (the "Parish") on or about November 4, 2008 (the "Contract"), which, along with all of its referenced documents, is annexed hereto and made part and parcel of this Agreement . . .

> most recently published All Urban Consumers All Item Index (CPI-U) U.S. City Average *published by the U.S. Department of Labor, Bureau of Labor Statistics* on *January 1, 2010, and then annually thereafter*. For each adjustment, the service fees of IESI *shall be increased or decreased* by a percentage amount equal to the net percentage change in the CPI-U or five (5) percent per annum, whichever is less. The net percentage change shall be the difference between the most recent CPI-U published for July 1, 2009 and that for January 1, 2010. Subsequent years of the Contract *shall be adjusted annually* based upon the net percentage change for the preceding year.[111]

Under the express terms of the Prime Contract, as both parties acknowledged at oral argument, the fees that Defendant was to receive from Jefferson Parish would be adjusted, up or down, based on fluctuations in the CPI. Under the express terms of the Subcontract, as the parties also acknowledged at oral argument, Plaintiff was to receive "equal CPI or fuel increases received by [Defendant] under the [Prime Contract], if any."[112] Thus, the parties contemplated that the amount that Plaintiff was to receive from Defendant could fluctuate yearly based on an upward adjustment in the CPI, as measured by a public report released by the Department of Labor. The terms of the Prime Contract put Plaintiff on notice that the amount of fees Defendant would receive from Jefferson Parish would be adjusted each year on January 1. Because the fluctuations in the CPI were available to Plaintiff, and the terms of the Prime Contract make clear that the fees "shall" be adjusted each year, Plaintiff was on notice that each January, it may have been entitled to an increased amount of fees if the CPI changes called for an upward adjustment. Despite not receiving any increased payment from Defendant each year, Plaintiff took no action to determine whether it was entitled to an increase. The fact that Defendant did not disclose the upward adjustment to Plaintiff, therefore, did not "effectually [] prevent the [Plaintiff] from *availing* [*itself*] of [its] cause

---

[111] Rec. Doc. 4–1.

[112] Rec. Doc. 4–2 at 2.

of action."[113]

Plaintiff cites *American Cyanamid Co. v. Electrical Industries, Inc.* for the proposition that the conduct that gives rise to the cause of action cannot also be the basis for prescription.[114] But Plaintiff reads *American Cyanamid* too broadly. In that case, a contractor who did repair work for American Cyanamid entered into an agreement with a subcontractor, whereby the contractor would bill American Cyanamid an extra sum for "services" of the subcontractor.[115] Although the contractor's invoice to American Cyanamid included the amount that would be paid to the subcontractor, the invoice did not reflect that any payment would be made to the subcontractor.[116] Because the invoices did not reflect payments to the subcontractor, and the contractor never revealed this agreement to American Cyanamid, American Cyanamid "was kept unaware of the payments . . . as a result of concealment," and thus was able to invoke the doctrine of *contra non valentem*.[117]

The Fifth Circuit noted that "[i]t would indeed be contrary to reason to hold that the selfsame fraud which rendered [the defendant] liable to the plaintiff could subsequently operate to allow [the defendant] to successfully interpose a plea of prescription."[118] However, the Fifth Circuit did so based on the premise that American Cyanamid was not "aware of any fact or

---

[113] *Renfroe*, 809 So. 2d at 953. *See also Able v. City of New Orleans*, 14-0186, p. 10–12 (La. App. 4 Cir. 9/17/14); 150 So. 3d 361, 369 (finding that the third category of *contra non valentem* did not apply where the defendant's conduct "provided sufficient information to excite attention and prompt further inquiry" that would have revealed the existence of a cause of action.).

[114] Rec. Doc. 21 at 11–12.

[115] *American Cyanamid Co. v. Electrical Industries, Inc.*, 630 F.2d 1123, 1125–26 (5th Cir. 1980).

[116] *Id.*

[117] *Id.* at 1128.

[118] *Id.*

circumstance sufficient to alert a reasonably prudent businessman to the possibility that a fraud was being perpetrated."[119]

As explained above, Plaintiff was aware that the Prime Contract called for yearly adjustments in fees based on the CPI. Plaintiff cannot now rely on its failure to inquire about the CPI increases in order to invoke the *contra non valentem* doctrine. As the *American Cyanamid* Court explained, the doctrine "will be of no avail to a plaintiff whose delay in filing suit has resulted from [its] own willfulness or neglect."[120] Accordingly, the Court finds that the doctrine of *contra non valentem* is not applicable. As a result, the Court finds that all of Plaintiff's claims to recover the amount of the CPI increases that accrued prior to May 5, 2018 are prescribed.

### B.    Base Price Per Load Claim

Finally, the Court must determine which prescriptive period applies to Plaintiff's claim that Defendant failed to pay Plaintiff an increased base price per load under the contract. Defendant does not distinguish between the alleged breach for failure to pay increases based on the CPI index and the alleged failure to pay an increased base price, and thus contends that the three-year prescriptive period applies to this claim as well.[121] Plaintiff, on the other hand, contends that the "new terms discussed between the parties were never reduced to writing following receipt of the 10-year extension to [Defendant's] contract with Jefferson Parish," and that Plaintiff nevertheless "continued to perform as [Defendant's] subcontractor after the acquisition of the 10-year contract extension."[122] Plaintiff contends that because "there was never an agreement concerning the

---

[119] *Id.*

[120] *Id.*

[121] Rec. Doc. 22–2 at 7–8.

[122] Rec. Doc. 21 at 12.

amount of compensation to be received," "the court in the context of contractual interpretation must supply the missing price."[123] Plaintiff further argues that determining what prescriptive period applies without the Court determining the price term "would be premature and unfair to [Plaintiff]."[124]

Plaintiff does not explain why the exact price term is relevant to whether the three-year or the ten-year prescriptive period applies. As the Court has explained, when determining the applicable prescriptive period, Louisiana courts look to "the character of an action disclosed in the pleadings."[125] Whether the parties ultimately agreed to an increased base price of $225.00 per load as alleged in the Petition, or some other price, the "character" of Plaintiff's claim is that Defendant has paid Plaintiff less money than what was owed for the work Plaintiff performed after the start of the ten-year extension of the Prime Contract. Accordingly, this claim is one for "the recovery of compensation for services rendered" subject to the three year-prescriptive period under article 3494, for the same reasons articulated above. In fact, as discussed above, Plaintiff conceded at oral argument that its claim regarding the base price was one seeking compensation for services rendered.

Although there may well be a dispute of fact as to the terms of the parties' agreement following the ten-year extension of the Prime Contract with Jefferson Parish, that dispute is not relevant to this Court's determination that some of Plaintiff's claims have prescribed. At a later stage in these proceedings, this Court may have to determine the price per load hauled that the parties agreed to upon the extension of the Prime Contract. However, because Plaintiff's claim is

---

[123] *Id.* at 13.

[124] *Id.* at 15.

[125] *Starns v. Emmons*, No. 88-C-1575 (La. 1/30/89) 538 So. 2d 275, 277.

that Defendant has not paid the amount owed to Plaintiff for work performed after the start of the ten-year extension of the Prime Contract, the claim is subject to the three-year prescriptive period of article 3494. Accordingly, the Court finds that Plaintiff's claims for compensation regarding the base price accruing prior to May 5, 2018 are prescribed.

## V. Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's "Partial Motion to Dismiss Pursuant to Fed. R. Civ. Proc. 12(b)(6) for Failure to State a Claim"[126] is **GRANTED**. All of Plaintiff's claims accruing prior to May 5, 2018 are prescribed.

**NEW ORLEANS, LOUISIANA,** this __18th__ day of November, 2021.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[126] Rec Doc. 17.

23