## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**METRO SERVICE GROUP, INC.**                           **CIVIL ACTION**

**VERSUS**                                              **CASE NO. 21-1136**

**WASTE CONNECTIONS BAYOU, INC.**                       **SECTION: "G"**

## ORDER AND REASONS

In this litigation, Plaintiff Metro Service Group, Inc., ("Plaintiff") brings claims against Defendant Waste Connections Bayou, Inc. ("Defendant") for breach of contract, wrongful termination, and unjust enrichment related to a subcontract between the parties for waste removal.[1] Defendant brings a counterclaim against Plaintiff to recover attorneys' fees arising out of these proceedings.[2] Before the Court is Defendant's "Motion for Summary Judgment or, in the Alternative, Motion for Partial Summary Judgment."[3] Plaintiff opposes the motion.[4] For the reasons discussed in detail below, there are material facts in dispute as to the existence of an enforceable contract between the parties after May 5, 2018. Accordingly, having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

On May 5, 2021, Plaintiff filed a "Petition for Breach of Contract and for Damages" against

---

[1] Rec. Doc. 1-2 at 5–6.

[2] Rec. Doc. 4.

[3] Rec Doc. 34.

[4] Rec Doc. 36.

Defendant in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana.[5] On June 10, 2021, Defendant removed the case to this Court based on diversity jurisdiction.[6] Plaintiff alleges that Defendant entered into a "Residential Garbage Collection Contract" (the "Prime Contract") on November 5, 2008 with Jefferson Parish for the collection of waste.[7] Plaintiff contends that Defendant then entered into a subcontract agreement (the "Subcontract") with Plaintiff on June 17, 2009, under which Plaintiff would pick up and haul waste from designated "Citizen Drop-off Centers" and deliver them to the landfill designated under the Prime Contract.[8]

Under the Subcontract, Plaintiff alleges that it was to receive an initial amount of $165.00 for each truckload of waste.[9] Plaintiff further alleges that it worked with Defendant to obtain a ten-year extension of the Prime Contract with Jefferson Parish, and the Prime Contract was ultimately extended to 2024.[10] Plaintiff contends that "[p]er the negotiations between the parties, and based upon the terms reached with the Parish, the $165.00 base service amount . . . was to increase to $225.00 per load upon the start of the 10-year contract extension."[11] Furthermore, Plaintiff contends that it also should have received increases in pay based on changes to the Consumer Price Index ("CPI") and/or fuel increases, equal to the CPI and/or fuel increases received by Defendant under the Prime Contract.[12] Plaintiff avers that although Defendant has received increased service

---

[5] Rec. Doc. 1-1.

[6] Rec. Doc. 1.

[7] Rec. Doc. 1-2 at 2.

[8] *Id.*

[9] *Id.* at 3.

[10] *Id.*

[11] *Id.*

[12] *Id.* at 4.

fees each year, they have "failed to remit/pass along to [Plaintiff] any such CPI or fuel increase," and instead "continue to remit only the original base amount reflected in the Subcontract."[13] Plaintiff further contends that "[f]ollowing [Plaintiff's] amicable demands, [Defendant] failed to follow the required notice provisions set forth in the Subcontract, and improperly terminated" the Subcontract, causing Plaintiff to suffer additional damages.[14]

As a result of the alleged breach of contract, Plaintiff claims it has suffered damages in the amount of approximately $1,364,756.65, with an additional "significant amount" of damages due to lost profits.[15] Accordingly, Plaintiff asserts claims against Defendant for: (1) breach of contract; (2) wrongful termination; and (3) unjust enrichment.[16] Defendant has filed an answer as well as a counterclaim for recovery of attorneys' fees arising out of these proceedings.[17]

On September 28, 2021, Defendant filed a motion to dismiss any claims "for compensation allegedly due and owing to Plaintiff for services rendered prior to May 5, 2018."[18] On November 18, 2021, the Court granted that motion, finding that all claims accruing prior to May 5, 2018 had prescribed.[19]

On April 5, 2022, Defendant filed the instant motion for summary judgment.[20] On April

---

[13] *Id.*

[14] *Id.*

[15] *Id.* at 4–5.

[16] *Id.* at 5–6.

[17] Rec. Doc. 4.

[18] Rec. Doc. 17 at 1.

[19] Rec. Doc. 27.

[20] Rec. Doc. 34.

11, 2022, Plaintiff opposed the motion.[21] On April 20, 2022, with leave of Court, Defendant filed a reply.[22]

## II. Parties' Arguments

### A.    *Defendant's Arguments in Support of the Motion*

Defendant argues that it is entitled to summary judgment because the parties did not have an enforceable contract. First, Defendant contends that the Subcontract "fails for lack of a determinable object."[23] Defendant notes that Louisiana Civil Code article 1973 provides that the "quantity of a contractual object may be undetermined, provided it is determinable," and argues that the Subcontract fails because it does not identify the specific number of hauls that Plaintiff was to perform.[24] Defendant points out that although the Subcontract estimated that Plaintiff would make 300 hauls per months, the Subcontract specifically stated that Defendant "does not guarantee a specific quantity."[25]

Second, Defendant contends that the terms of the Subcontract stated that it would expire on June 30, 2014, and the Subcontract was not extended.[26] Defendant highlights that the Subcontract requires any extensions to be made in writing, and argues that the parties never agreed in writing to renew the Subcontract.[27] Defendant further argues that its 2013 contract with Jefferson Parish ("2013 Contract") explicitly terminated the earlier Prime Contract, and that as a

---

[21] Rec. Doc. 36.

[22] Rec. Doc. 46.

[23] Rec. Doc. 34-1 at 15.

[24] *Id.*

[25] *Id.* at 16

[26] *Id.*

[27] *Id.* at 16–17.

result, the Subcontract was terminated as well.[28]

Third, Defendant argues that it has already paid Plaintiff for the services provided between May 5, 2018, the earliest day by which Plaintiff's claims are not prescribed, and September 30, 2020 when Defendant stopped using Plaintiff's services.[29] Defendant notes that it paid Plaintiff at the $165 per haul rate that was specified in the Subcontract until Defendant stopped using Plaintiff's services on September 30, 2020.[30] Defendant contends that it was not obligated to pay Plaintiff CPI increases because, as discussed above, the CPI increase provision in the Subcontract is unenforceable because the Subcontract expired, and in any event lacked a determinable object.[31] Furthermore, Defendant argues that Plaintiff was not entitled to an increased rate of $225 per haul.[32] Defendant contends that Jimmie Woods' deposition testimony regarding the $225 rate is "equivocal" and establishes only that "it might have been one of four representatives of Defendant that committed to pay Plaintiff" that amount.[33] Defendant argues that Plaintiff "cannot prove" that any of these representatives had the authority to agree to the $225 rate.[34] Furthermore, Defendant argues that Plaintiff's allegation that the parties agreed to this price is "belied by the fact [that] Plaintiff never charged Defendant that rate for the next five years."[35]

Alternatively, Defendant contends that if the Court does find that Defendant is bound to

---

[28] *Id.* at 17.

[29] *Id.* at 18.

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.* at 20.

[35] *Id.*

pay Plaintiff additional amounts for services rendered between May 2018 and September 2020, Defendant is entitled to summary judgment as to any damages extending beyond September 2020.[36] Defendant argues that damages for future lost profits may only be recovered when they are "not speculative or uncertain in their nature, and are susceptible of proof with reasonable certainty."[37] Defendant contends that any damages for lost profits between 2020 and 2024 are too speculative to be recoverable.[38] Defendant makes several arguments in opposition to an expert report provided by Plaintiff which attempts to calculate future lost profits by averaging the number of loads per month hauled between 2009 and 2020.[39] First, Defendant argues that Plaintiff did not meet this average number for the last fifteen months prior to the termination of Plaintiff's services.[40] Defendant further argues that "the Court may also take judicial notice of the fact that any number that the jury could possibly base a future damages award on is inherently speculative given the onset (and duration) of the pandemic and associated stay-at-home orders beginning in March 2020."[41]

## B.   *Plaintiff's Opposition to the Motion to Dismiss*

In opposition, Plaintiff concedes that the Subcontract itself was not extended and that it terminated upon the termination of the Prime Contract.[42] However, Plaintiff contends that it had an oral agreement with Defendant to continue the relationship as it was under the Subcontract, but

---

[36] *Id.* at 21.

[37] *Id*. at 22.

[38] *Id*.

[39] *Id.* at 22–23.

[40] *Id.*

[41] *Id.* at 23

[42] Rec. Doc. 36 at 10.

with an increased price per load of waste hauled.[43] Plaintiff argues that under Louisiana law, oral contracts valued at greater than five hundred dollars "must be proved by at least one witness and other corroborating circumstances."[44]

Plaintiff points to deposition testimony and various documents to corroborate this oral agreement. Plaintiff points to an email sent by Defendant's employee Barry Bordelon to his supervisor, Thomas Martyn, saying "I understand we are committed to continue our partnership with Metro in JP. Jimmy [sic] Woods is requesting a writen [sic] commitment from us to continue our present relationship."[45] Plaintiff further notes that when Bordelon asked how he should respond, Martyn stated that "current terms and conditions will continue with our new agreement."[46] Plaintiff further points out that it was listed as Defendant's subcontractor in the 2013 Contract with Jefferson Parish.[47] Plaintiff also points to an email exchange where Martyn agreed to provide a written confirmation of the agreement.[48] Lastly, Plaintiff points to an email from Martyn to Bordelon stating that he "personally told jimmy [sic] in his suite after a saints game congrats on his Nola contract and that we would continue in JP."[49] Plaintiff highlights that although it did not have a written contract, Plaintiff continued to do the work after the 2013 Contract was adopted, and Defendant submitted affidavits to Jefferson Parish on each invoice stating that

---

[43] *Id.*

[44] *Id.*

[45] *Id.* at 14.

[46] *Id.* at 15.

[47] *Id.*

[48] *Id.*

[49] Rec. Doc. 36-12.

Plaintiff was the subcontractor.[50]  Nevertheless, Plaintiff argues that Defendant took advantage of the fact that there was no written contract and attempted to "kick[] Metro to the proverbial curb" in order to gain additional profits for itself.[51]

In response to Defendant's argument that the contract fails for lack of a precise quantity of loads to be hauled, Plaintiff argues that such a term is not required. Plaintiff notes that even Defendant's 2013 Contract with Jefferson Parish does not "guarantee as to the quantity of unit counts," and argues that Defendant does not "consider its crown jewel contract to be without binding effect."[52] In any event, Plaintiff notes that under the Subcontract, Plaintiff was to be the exclusive subcontractor assigned to this particular route unless terminated by written notice.[53] Plaintiff argues that the Subcontract anticipated about 300 hauls per month, and that Defendant's "April 2014 Operational Plan for Curbside Recycle & Solid Waste Collection" estimated approximately 335 loads per month.[54] Plaintiff further argues that the "historical hauling data submitted by [Defendant] demonstrates the general accuracy" of these estimates, and that this evidence is "sufficient for the jury to determine the appropriate rate and volume" for the period of time following Defendant's termination of Plaintiff's services.[55]

Plaintiff also argues that Defendant is not entitled to summary judgment based on Defendant's employees purported lack of authority to enter into an agreement with Plaintiff.[56]

---

[50] Rec. Doc. 36 at 17.

[51] *Id.*

[52] *Id.* at 25.

[53] *Id.*

[54] *Id.* at 26.

[55] *Id.*

[56] *Id.*

Plaintiff argues that Barry Bordelon was Plaintiff's main contact, and that Bordelon sought confirmation of the parties' contract from his supervisor, Thomas Martyn, who made "explicit and repeated public assurance" of Defendant's intent to provide a written contract.[57] Plaintiff further notes Bordelon's testimony where he stated that Martyn "is the hierarchy . . . at that district. He's the go-to guy."[58] Plaintiff argues that if Martyn did not have authority to enter into a contract, he "may be liable to his employer, but [Plaintiff's claims] cannot be dismissed on summary judgment for its reasonable and good faith reliance on Tom Martyn and Barry Bordelon's commitments and promises."[59] Plaintiff argues that the evidence "more than satisfies the low burden of proof as to the apparent authority of Thomas Martyn."[60]

## C.     Defendant's Arguments in Further Support of the Motion

Defendant makes three arguments in response. First, Defendant argues that the Subcontract was a fully integrated agreement and could not be modified or extended through oral representations.[61] Defendant highlights a provision of the Subcontract which states that there "are no representations, agreements or understandings, oral or written, pertaining to the subject matter of this Agreement that are not fully expressed herein."[62] Defendant contends that because this provision is "clear and explicit," the Court should enforce it as written.[63]

Second, Defendant argues that Plaintiff cannot "pick and choose" which provisions of the

---

[57] Id.

[58] Id.

[59] Id. at 26.

[60] Id.

[61] Rec. Doc. 46 at 2.

[62] Id.

[63] Id. at 4.

Subcontract apply to the parties alleged oral agreement.[64] Defendant contends that "Plaintiff cannot enforce individual terms and provisions of the Subcontract after 2013 without convincing the Court that Defendant adopted, by reference, the entire Subcontract under the 2013 [] Contract" between Defendant and Jefferson Parish.[65] Because one of the Subcontract terms is that it expired upon termination of the Prime Contract, and the Prime Contract terminated on December 31, 2013, Defendant argues that the terms of the Subcontract do not apply to any subsequent agreement.[66] Defendant argues that "any putative agreement after that date may only be enforced pursuant to new terms on which Plaintiff must be able to prove the parties agreed."[67] Defendant avers that paying $165 per load was "the only formal agreement the parties reached for work after December 31, 2013, and Defendant paid Plaintiff that amount for each load Plaintiff actually hauled."[68]

Third, Defendant argues that because there was no "formal contract" and no commitment to "direct any volume of work to Plaintiff" after December 31, 2013, Plaintiff can only recover for work it actually performed.[69] Defendant argues that because there was no contract, Plaintiff can only recover for unjust enrichment, and unjust enrichment does not contemplate prospective losses.[70] Instead, Defendant argues that Plaintiff's recovery is limited to payment for the value of the services it actually performed.[71] However, Defendant concedes that Plaintiff is entitled to put

---

[64] *Id.* at 5.

[65] *Id.* at 6.

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id.* at 7.

[70] *Id.* at 8.

[71] *Id.*

on evidence to determine the value of the services Plaintiff provided.[72]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[73] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[74] All reasonable inferences are drawn in favor of the nonmoving party.[75] Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[76] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[77] The nonmoving party may not rest upon the pleadings.[78] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[79]

The party seeking summary judgment always bears the initial responsibility of showing the

---

[72] *Id.*

[73] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[74] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[75] *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000))

[76] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[77] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[78] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[79] *See id.*; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[80] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[81] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[82] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[83]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[84] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[85]

## IV. Analysis

The Court begins by noting that it has already held that all of Plaintiff's claims for services rendered prior to May 5, 2018 prescribed because Plaintiff failed to bring them within the three-

---

[80] *Celotex*, 477 U.S. at 323.

[81] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (quoting *Little*, 939 F.2d at 1299).

[82] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[83] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[84] *Little*, 37 F.3d at 1075 (internal citations omitted).

[85] *Morris*, 144 F.3d at 380.

year prescriptive period provided for by Louisiana Civil Code article 3494.[86] Defendant now argues that it is entitled to summary judgment because the parties did not have an enforceable contract after May 5, 2018. Therefore, the Court must determine whether there is a genuine dispute of material fact as to the existence of an enforceable contract between the parties after May 5, 2018.

There are several contractual provisions that are relevant to this motion. It is undisputed that between 2008 and 2013, Defendant had a contract with Jefferson Parish (the "Prime Contract").[87] It is further undisputed that Defendant subcontracted some of its responsibilities under the Prime Contract to Plaintiff (the "Subcontract").[88] The Prime Contract had a five-year term, with an option to renew, and had an expiration date of June 30, 2014.[89] The Subcontract, in turn, had a clause stating that it "shall terminate upon the expiration or termination of the [Prime] Contract, unless otherwise terminated pursuant to this Agreement."[90] Furthermore, the terms of the Subcontract provided that it could not be altered or amended except by "another agreement in writing signed by [Defendant] and [Plaintiff]."[91] Notably, the parties agree that the Subcontract expired when the Prime Contract was terminated in 2013 upon Defendant entering into a new contract with Jefferson Parish ("2013 Contract").[92] In opposition to the instant motion, Plaintiff concedes that the Subcontract itself did not continue after the Prime Contract terminated, and thus

---

[86] Rec. Doc. 27.

[87] Rec. Doc. 34-7.

[88] Rec. Doc. 34-6.

[89] Rec. Doc. 34-7 at 26.

[90] Rec. Doc. 34-6 at 1.

[91] Rec. Doc. 34-6 at 4.

[92] Rec. Doc. 34–1 at 5; Rec. Doc. 36 at 9–10.

did not apply to the 2013 Contract.[93] Rather, Plaintiff argues that the parties had an oral agreement to continue their relationship on the same terms as it existed under the Subcontract.[94]

"A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished."[95] "[O]ffer and acceptance [of a contract] may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent."[96] Although "[t]he object of a contract must be determined at least as to its kind," "[t]he quantity of a contractual object may be undetermined, provided it is determinable."[97] Where a contract is not reduced to writing but its value is in excess of five hundred dollars, "the contract must be proved by at least one witness and other corroborating circumstances."[98] However, the corroborating circumstances must come from a source other than the plaintiff.[99]

Plaintiff contends that it entered into an oral agreement with Defendant after the expiration of the Subcontract. Under Louisiana law, such a contract can be proved by at least one witness and other corroborating circumstances.[100] Plaintiff easily meets this low bar. Plaintiff has offered proof of the oral agreement through deposition testimony of several witnesses and corroborating

---

[93] Rec. Doc. 36 at 10–11 ("Waste Connections asserts that because the 2009 Subcontract with Metro was tied to the 2008 Prime Contract there can be no continuation of that agreement after [the] 2008 Prime Contract ended. Absent additional facts, Waste Connections is correct. Metro does not contend, however, that the actual paper 2009 Subcontract continued to apply in perpetuity, or even a day after the 2013 [] Contract was executed.").

[94] *Id.* at 10.

[95] La. Civ. Code. art 1906.

[96] La. Civ. Code art 1927.

[97] La. Civ. Code. art. 1973.

[98] La. Civ. Code. art. 1846.

[99] *See, e.g., Hodson v. Daron Cavaness Builder, Inc.*, 17-1235 (La. App. 1 Cir. 2/27/18); 243 So.3d 597, 600.

[100] La. Civ. Code. art. 1846.

circumstances. When asked whether anybody asked Defendant for a written commitment that the parties' relationship would continue under the 2013 Contract, Jimmie Woods, Plaintiff's CEO, testified "I'm certain that that occurred, yes."[101] In addition, Plaintiff has offered evidence of communications between Defendant's employees corroborating the existence of the oral contract. For example, Defendant's employee Barry Bordelon emailed his supervisor, Thomas Martyn, stating as follows:

> I understand we are committed to continue our partnership with Metro in JP. Jimmy [sic] Woods is requesting a writen [sic] commitment from us to continue our present relationship.
>
> I feel this is important to our ratification and continued success.
>
> Metro has been a very helpful partner in this and other matters when we need them.
>
> How may I respond?[102]

In response, Martyn stated that "current terms and conditions will continue with our new agreement."[103] Furthermore, Plaintiff points to Bordelon's deposition testimony where, when asked whether Plaintiff was "listed as a subcontractor that [Defendant] was using" in the documents submitted to Jefferson Parish for the 2013 Contract, Bordelon answered "[y]es, I believe they were listed."[104] Plaintiff also offers an affidavit signed by Thomas Fowler, Defendant's Vice President, which includes an attachment stating that "Progressive Waste Solutions of LA, Inc. plans to use the following subcontractors for this contract: . . . Metro

---

[101] Rec. Doc. 36-5 at 17.

[102] Rec. Doc. 36-11.

[103] *Id.*

[104] Rec. Doc. 36–6 at 26.

Disposal."[105] Additionally, Plaintiff points to an email from Thomas Martyn to Barry Bordelon stating as follows regarding a conversation with Plaintiff's CEO:

> FYI. I personally told jimmy [sic] in his suite after a saints game congrats on his Nola contract and that we would continue in JP. I just don't want to jinx it by putting in writing that we will continue with him after we get our new contract. We will use him. As soon as it's done I'll give him a letter[106]

Defendant does not respond to any of this evidence. The Louisiana Supreme Court has explained that the "other corroborating circumstances" necessary to prove the existence of an oral contract "need only be general in nature; independent proof of every detail of the agreement is not required."[107] Furthermore, "[w]hether there were corroborating circumstances sufficient to establish an oral contract is a question of fact."[108] Given that Plaintiff was listed as the subcontractor on documents relating to the 2013 Contract, and the various statements made by Defendant's representatives suggesting that the parties had an agreement, the Court finds that there is a genuine dispute of material fact as to whether the parties entered into an oral agreement for services related to the 2013 Contract.[109]

Defendant's arguments to the contrary fail. First, Defendant denies the existence of the oral contract by arguing that the Subcontract between the parties was a "fully-integrated written

---

[105] Rec. Doc 36-13 at 1–2.

[106] Rec. Doc. 36-12.

[107] *Suire v. Lafayette City-Parish Consol. Gov*, 04-1459 (La. 4/12/05); 907 So.2d 37, 58.

[108] *See, e.g.*, *Lakewood Estates Homeowner's Ass'n, Inc.* v. *Markle*, 02-1864 (La. App. 4 Cir. 4/30/03); 847 So.2d 633, 638.

[109] Defendant also objects to Plaintiff's suggestion that the Subcontract itself can serve as corroboration of oral contract because in the case on which Plaintiff relies, the contract did not include an integration clause. Rec. Doc. 46 at 4. However, as explained below, an integration clause in a contract does not preclude subsequent oral agreements. *Driver Pipeline Co. v. Cadeville Gas Storage, LLC*, 49,375 (La. App. 2 Cir. 10/1/14); 150 So. 3d 492, 502. In any event, Plaintiff has provided other evidence that is sufficient to corroborate the existence of an oral agreement.

agreement" and thus cannot be "alter[ed]" by oral representations.[110] To be sure, the Subcontract between the parties contained an integration clause which stated as follows:

> This document forms the complete Agreement and represents the full arrangement between the [Defendant] and [Plaintiff] for the provision of the Services. There are no representations, agreements or understandings, oral or written, pertaining to the subject matter of this Agreement that are not fully expressed herein.

However, the clause is irrelevant to the existence of this oral contract for two reasons. First, as Defendant states throughout its briefing, the Subcontract terminated upon the expiration of Defendant's Prime Contract with Jefferson Parish. Thus, Plaintiff is not seeking to modify the Subcontract with oral representations, but rather is attempting to prove the existence of a subsequent oral contract related to the 2013 Contract Defendant entered with Jefferson Parish. Second, although a merger clause "precludes any prior or contemporaneous agreements which are not set forth in the contract," they "do[] not prohibit *subsequent* agreements or modifications which may be made orally, or by silence, inaction, or implication."[111] Therefore, the integration clause in the original Subcontract does not preclude proof of a subsequent oral contract.[112]

Defendant argues that the Subcontract is not enforceable because it does not identify the specific volume of hauls that Plaintiff was to perform, and therefore "fails for lack of a determinable object."[113] To begin, as the Court has explained and both parties agree, the Subcontract terminated upon the expiration of the Prime Contract. Plaintiff is instead arguing that

---

[110] Rec. Doc. 46 at 2.

[111] *Driver Pipeline Co.*, 150 So. 3d at 492.

[112] Defendant cites *Omnitech Intern, Inc. v. Clorox Co*., 11 F.3d 1316 (5th Cir. 1994) and argues that the Fifth Circuit held that a merger clause precludes a subsequent oral modification that pertains to an issue previously addressed in the written agreement. Rec. Doc. 46 at 3. However, Defendant misreads the Fifth Circuit's opinion. The Fifth Circuit found that any subsequent oral modifications to the agreements at issue were prohibited not because of the merger clause, but rather because the person who made the oral modifications did not have actual or apparent authority to modify the agreement. *Omnitech*, 11 F.3d at 1329.

[113] Rec. Doc. 34-1 at 15.

the parties entered a subsequent, oral agreement regarding Plaintiff's participation in fulfilling Defendant's obligations under the 2013 Contract. To the extent that Defendant's argument that the oral contract fails for lack of a "determinable object," Defendant is not entitled to summary judgment on this basis. Louisiana Civil Code Article 1973 provides that the "object of a contract must be determined at least as to its kind," but that "the quantity of a contractual object may be undetermined, provided it is determinable."[114] Defendant relies on a 1970 case from the Louisiana Fourth Circuit Court of Appeal where the Court held that "both the quality and the quantity of the object" of the contract at issue was "too indeterminate" to render the contract enforceable.[115] The contract in question was for the plaintiff to install "one or more coin operated music devices, and/or one or more legal coin operated amusement devices with the number and type of such being within [the plaintiff's] sole discretion and at [the plaintiff's] option."[116] The Louisiana Fourth Circuit found that the object of this contract was not determinable because the plaintiff "promised nothing definite, and defendant could not have exacted any definite machine nor even any definite kind of machine."[117]

The oral contract at issue is far afield from the one the Louisiana Fourth Circuit found unenforceable. As discussed above, Plaintiff has produced sufficient corroborating evidence of an oral contract for Plaintiff to perform waste hauling services under Defendant's 2013 Contract with Jefferson Parish, including Defendant's employee's statement that "current terms and conditions

---

[114] La Civ. Code. art 1973.

[115] *TAC Amusement Co. v. Henry*, 238 So. 2d 398, 400 (La. App. 4 Cir. 1970).

[116] *Id.*

[117] *Id.* at 399.

will continue with our new agreement."[118] Under the terms of the Subcontract, Plaintiff was the exclusive subcontractor assigned to the particular route it serviced.[119] Thus, the corroborating evidence suggests that Plaintiff was to haul all of the waste from its assigned route. In addition, the Subcontract specifically estimated that Plaintiff would perform 300 hauls per month.[120] Furthermore, Plaintiff offers evidence of Defendant's "April 2014 Operational Plan for Curbside Recycle & Solid Waste Collection" which estimated that Plaintiff would haul 335 loads per month.[121] Defendant does not explain why the lack of a precise volume renders the contract unenforceable. Therefore, Defendant is not entitled to summary judgment on this basis.

Defendant also argues that it is entitled to summary judgment because it paid Plaintiff for its services between 2018 and 2020 at the rate agreed upon in the Subcontract. However, this argument fails for the same reasons described above. Because the corroborating evidence "need only be general in nature" and "independent proof of every detail of the agreement is not required,"[122] it is for the jury to decide the precise terms of the contract. Plaintiff has offered evidence creating a genuine dispute of material fact as to whether the parties agreed to an increased rate for services performed under the 2013 Contract Defendant entered with Jefferson Parish.[123] For example, Jimmie Woods testified that Defendant employees Barry Bordelon, Gus Bordelon,

---

[118] Rec. Doc. 36-11.

[119] Rec. Doc. 34-6 at 1 ("Contractor agrees that Subcontractor shall be the exclusive subcontractor/service provider to provide the Services to specifically designated geographic areas (the 'Routes') with respect to the Services.")

[120] *Id.* at 2.

[121] Rec. Doc. 36-6 at 33.

[122] *Suire v. Lafayette City-Parish Consol. Gov*, 04-1459 (La. 4/12/05); 907 So. 2d 37, 58.

[123] Although Defendant suggests that these individuals "did or did not have decision making authority for Defendant" to agree to an increased rate, longstanding principles of agency law bind Defendant to acts for which its agents had apparent authority. *Boulos v. Morrison*, 503 So. 2d 1, 3 (La. 1987).

Tom Martyn, and/or Phil Smith agreed to the increased rate.[124] Additionally, if the jury finds that the oral contract incorporated the CPI increase provision from the Subcontract, Plaintiff may also be entitled to additional payments based on increases to the CPI. Therefore, Defendant is not entitled to summary judgment based on the payments it made at the rate of $165 per haul between 2018 and 2020.

Lastly, Defendant argues that it is entitled to summary judgment on any claimed damages between 2020 and 2024, because Defendant stopped using Plaintiff's services in 2020. Louisiana Civil Code article 1995 provides that "[d]amages are measured by the loss sustained by the oblige and the profit of which he has been deprived." Stated differently, "the measure of damages for a breach of contract is the sum that will place plaintiff in the same position as if the obligation had been fulfilled."[125] Damages for lost profits "must be proved with reasonable certainty and will not be allowed where purely conjectural."[126] However, "broad latitude is given in proving lost profits because this item of damages is often difficult to prove and mathematical certainty or precision is not required."[127] The Fifth Circuit has explained that reasonable certainty "merely means that the plaintiff must prove damages by a preponderance of the evidence as in other civil contexts."[128]

Defendant contends that any expected profits within this time period cannot be proved with reasonable certainty because it is not known how many hauls Plaintiff would have performed.

---

[124] Rec. Doc. 36-5 at 21.

[125] *LAD Servs. of Louisiana, LLC v. Superior Derrick Servs., LLC*, 13-0163 (La. App. 1 Cir. 11/7/14); 167 So. 3d 746, 761.

[126] *A & W Sheet Metal, Inc. v. Berg Mech., Inc*., 26,799 (La. App. 2 Cir. 4/5/95); 653 So. 2d 158, 163 (citing *Tide Craft, Inc. v. Red Ball Oxygen Co.*, 514 So. 2d 664, 672 (La. App. 2d Cir. 1987).

[127] *Louisiana Farms v. Louisiana Dept. of Wildlife and Fisheries*, 95-845 (La. App. 3 Cir. 10/9/96); 685 So. 2d 1086, 1105 (citing *Fritscher v. Chateau Golf & Country Club*, 453 So. 2d 964 (La. App. 5 Cir. 1984)).

[128] *Mobil Expl. and Producing U.S., Inc. v. Cajun Const. Servs., Inc*., 45 F.3d 96, 101–02 (5th Cir. 1995).

However, as explained above, Plaintiff has offered evidence that Defendant estimated Plaintiff to haul around 300 loads per month.[129] Further, Plaintiff has produced an expert report from a certified public accountant calculating the profit Plaintiff would have received through 2024 had Defendant not allegedly terminated the agreement in 2020.[130] Though Defendant disputes the accuracy of the report, and provides its own evidence that Plaintiff hauled fewer than the expert's expected number, this is a factual dispute that must be resolved by the jury. Therefore, Defendant is not entitled to summary judgment on damages for lost profits between 2020 and 2024.[131]

### V. Conclusion

For the foregoing reasons, there are material facts in dispute as to the existence of an enforceable contract between the parties after May 5, 2018. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's "Motion for Summary Judgment or, in the Alternative, Motion for Partial Summary Judgment"[132] is **DENIED.**

**NEW ORLEANS, LOUISIANA,** this ___17th___ day of May, 2022.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[129] Rec. Doc. 34-6 at 2.

[130] Rec. Doc. 34-13.

[131] Defendant concedes that in the absence of a contract, Plaintiff would be entitled to recover for unjust enrichment, or payment for work Plaintiff already performed. Rec. Doc. 46 at 7. Defendant further concedes that Plaintiff would be entitled to "put on evidence of the usual and customary value of the services it actually performed." *Id.* However, Defendant argues that Plaintiff cannot recover for future work it had not yet performed. *Id.* The Court does not understand Plaintiff to argue otherwise. As discussed above, if Plaintiff puts on evidence of an oral contract that was to last until 2024, the jury may award Plaintiff lost profits. If the jury finds that no oral contract existed, Plaintiff's recovery will be limited to payment for services already performed.

[132] Rec Doc. 34.