UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **METRO SERVICE GROUP, INC.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 21-1136** |
| **WASTE CONNECTIONS BAYOU, INC.** | **SECTION: "G"** |

### ORDER AND REASONS

In this litigation, Plaintiff Metro Service Group, Inc., ("Plaintiff") brings claims against Defendant Waste Connections Bayou, Inc. ("Defendant") related to an alleged contract between the parties for waste removal.[1] Before the Court is Plaintiff's "Rule 54(b) Motion for Revision of Interlocutory Judgment."[2] Defendant opposes the motion.[3] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

### I. Background

On May 5, 2021, Plaintiff filed a "Petition for Breach of Contract and for Damages" against Defendant in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana.[4] On June 10, 2021, Defendant removed the case to this Court based on diversity jurisdiction.[5] Plaintiff alleges that Defendant entered into a "Residential Garbage Collection Contract" (the "Prime

---

[1] Rec. Doc. 1-2 at 5–6.

[2] Rec. Doc. 97.

[3] Rec Doc. 104.

[4] Rec. Doc. 1-1.

[5] Rec. Doc. 1.

1

Contract") on November 5, 2008 with Jefferson Parish for the collection of waste.[6] Plaintiff contends that Defendant then entered into a subcontract agreement (the "Subcontract") with Plaintiff on June 17, 2009, under which Plaintiff would pick up and haul waste from designated "Citizen Drop-off Centers" and deliver them to the landfill designated under the Prime Contract.[7]

Under the Subcontract, Plaintiff alleges that it was to receive an initial amount of $165.00 for each truckload of waste.[8] Plaintiff further alleges that it worked with Defendant to obtain a ten-year extension of the Prime Contract with Jefferson Parish, and the Prime Contract was ultimately extended to 2024.[9] Plaintiff contends that "[p]er the negotiations between the parties, and based upon the terms reached with the Parish, the $165.00 base service amount . . . was to increase to $225.00 per load upon the start of the 10-year contract extension."[10] Furthermore, Plaintiff contends that it also should have received increases in pay based on changes to the Consumer Price Index ("CPI") and/or fuel increases, equal to the CPI and/or fuel increases received by Defendant under the Prime Contract.[11] Plaintiff avers that although Defendant has received increased service fees each year, they have "failed to remit/pass along to [Plaintiff] any such CPI or fuel increase," and instead "continue to remit only the original base amount reflected in the Subcontract."[12] Plaintiff further contends that "[f]ollowing [Plaintiff's] amicable demands, [Defendant] failed to follow the required notice provisions set forth in the Subcontract, and improperly terminated" the

---

[6] Rec. Doc. 1-2 at 2.

[7] *Id.*

[8] *Id.* at 3.

[9] *Id.*

[10] *Id.*

[11] *Id.* at 4.

[12] *Id.*

Subcontract, causing Plaintiff to suffer additional damages.[13]

On September 28, 2021, Defendant filed a motion to dismiss any claims "for compensation allegedly due and owing to Plaintiff for services rendered prior to May 5, 2018."[14] On November 19, 2021, the Court granted that motion, finding that all claims accruing prior to May 5, 2018 had prescribed.[15]

After a jury trial in this matter, the Court entered a judgment in favor of Plaintiff in the amount of $1,396,664.93.[16] On June 24, 2022, Plaintiff filed the instant "Rule 54(B) Motion for Revision of Interlocutory Judgment," in which Plaintiff requests that the Court modify its November 19, 2021 Order finding that claims prior to May 5, 2018 prescribed.[17] Plaintiff requests that the Court limit that ruling only to the time period between 2009 and 2013, allowing Plaintiff to recover damages between 2014 and May 5, 2018. On July 5, 2022, Defendant opposed the motion.[18]

## II. Parties' Arguments

### A.   *Plaintiff's Arguments in Support of the Motion*

Plaintiff contends that under Rule 54(b), the Court should reconsider its November 19, 2021 Order finding that claims prior to May 5, 2018 prescribed.[19] Plaintiff argues that district courts apply the following four factors in analyzing requests under Rule 54(b): (1) whether the

---

[13] *Id.*

[14] Rec. Doc. 17 at 1.

[15] Rec. Doc. 27.

[16] Rec. Doc. 94.

[17] Rec. Doc. 97.

[18] Rec. Doc. 104.

[19] Rec. Doc. 97-1 at 4.

motion is necessary to correct a manifest error of law or fact; (2) whether the movant presents newly discovered or previously unavailable evidence; (3) whether the motion is necessary in order to prevent manifest injustice; or (4) whether the motion is justified by an intervening change in controlling law.[20] Nevertheless, Plaintiff asserts that the Court can reconsider a prior interlocutory ruling for any reason it deems sufficient.[21]

Plaintiff contends that the doctrine of *contra non valentem* is an equitable doctrine and that prescriptive statutes should be construed against prescription.[22] Plaintiff contends that the doctrine of *contra non valentem* would suspend the prescriptive period here because Defendant prevented Plaintiff from availing itself of its cause of action by "lull[ing] [Plaintiff] into a course of inaction in the enforcement of [its] right" by "fail[ing] to perform some legal duty whereby Plaintiff has been kept in ignorance of [its] rights."[23] Plaintiff contends that the evidence at trial demonstrated that Defendant "actively lulled [Plaintiff] into the belief its rights would be protected and recognized by the promised written subcontract."[24]

Plaintiff further argues that "tacit or express renunciation or acknowledgement of the benefits of prescription interrupts prescription, staring the clock anew."[25] Plaintiff cites *Lima v. Schmidt* for the proposition that "[a]cknowledgement interruptive of prescription results from any act or fact which contains or implies the admission of the existence of the right."[26] Plaintiff also

---

[20] *Id*. at 5.

[21] *Id*.

[22] *Id*. at 7.

[23] *Id*. at 8.

[24] *Id*.

[25] *Id*.

[26] *Id*. at 8–9 (citing 595 So. 2d 624, 629 (La. 1992)).

4

cites Civil Code Article 3450, which provides that "[r]enunciation may be express or tacit. Tacit renunciation results from circumstances that give rise to a presumption that the advantages of prescription have been abandoned." Plaintiff contends that article 3450 "has been used to address a debtor lulling the creditor into believing he will not contest liability, then moving to strike those claims as prescribed."[27]

Plaintiff contends that Defendant's "active deceit in regard to a new 2014 subcontract functions as a tacit renunciation/acknowledgement of the benefits of prescription."[28] Plaintiff contends that Defendant "acknowledged the debt to [Plaintiff] . . . and delayed [Plaintiff's] realization that it needed to sue in order to be treated honestly."[29] Plaintiff contends that Defendant "cannot induce [Plaintiff] to continue work based on the promise that all its concerns would be resolved in the written contract, and then claim it missed the window to sue by believing the contract would come as promised."[30] Plaintiff contends that Jimmie and Glenn Woods "accepted responsibility for not pursuing the damages associated with the written 2009 Subcontract quickly enough," which cost them $1,154,825 according to Plaintiff's expert.[31] Plaintiff further argues that "[t]here is no debate now that [Plaintiff] is entitled to the $1,092,380 in underpayment for the time period of January 2014 until May 4, 2018, but for the application of prescription."[32] Plaintiff contends that "the damages after the termination of the written 2009 Subcontract are materially

---

[27] *Id.*

[28] *Id.* at 10.

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

different than those tied to the written contract" and that "[t]hose damages should be available" based on Defendant's "active efforts to induce [Plaintiff] into inaction."[33] Thus, Plaintiff contends that Defendant "renounced its right to claim prescription on the 'interim' oral agreement," and therefore Plaintiff is entitled to recover damages starting on January 1, 2014.[34] Accordingly, Plaintiff asks the Court to limit its November 19, 2021 Order to the 2009-2013 time period associated with the written 2009 Subcontract.

### B.   *Defendant's Opposition to the Motion*

Defendant argues that Plaintiff cannot rely on Rule 54(b), because that rule allows the modification of an interlocutory ruling "before the entry of a judgment adjudicating all the claims and all the parties rights and liabilities."[35] After a final judgment is entered, Defendant contends that Rule 59(e) governs.[36] Defendant argues that Rule 59(e) should "not be used to 'rehash evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment'" or to "re-urge matters that have already been advanced by a party."[37] Defendant contends that none of the factors that courts consider under rule 59(e) are satisfied.[38]

First, Defendant argues that the Court's November 19, 2021 ruling was correct, and thus was not the result of a manifest error of law or fact.[39] Defendant contends that the Court already rejected the same argument Plaintiff makes here, which is that Defendant "fraudulently induced"

---

[33] *Id.*

[34] *Id.* at 11.

[35] Rec. Doc. 104 at 2.

[36] *Id.*

[37] *Id*. at 7–8.

[38] *Id.*

[39] *Id.* at 9.

6

Plaintiff to not pursue its rights.[40] Defendant argues that to invoke *contra non valentem*, Defendant's actions must have "effectually prevent[ed] the plaintiff from pursuing a cause of action" and "the plaintiff must have been reasonable in his or her inaction."[41] Defendant argues that Plaintiff cannot meet either of these requirements. Defendant notes that it is undisputed that Defendant never paid Plaintiff a higher rate, and therefore Plaintiff was on notice of its claim.[42] Defendant argues that Plaintiff's claim that it would have asserted its rights earlier had Defendant not represented that a new written contract was forthcoming does not relieve Plaintiff of its obligation to avail itself of its rights.[43] Defendant contends that Plaintiff "has not demonstrated that it was reasonable for it to wait seven and a half years . . . to file suit to enforce the obligation."[44]

As to Plaintiff's argument that Defendant renounced prescription, Defendant argues that it "never offered Plaintiff reparation or indemnity, never made an unconditional offer or payment, and never did anything to lull Plaintiff into believing Defendant would not contest liability for past amounts Plaintiff now claims are due."[45] Defendant also argues that it "never did anything to abandon rights or admit liability for any additional amounts Plaintiff claimed it was owed."[46] Defendant contends that although it "expressed an intent to enter into a written agreement,"

---

[40] *Id.* at 10.

[41] *Id.*

[42] *Id*. at 11.

[43] *Id*. at 12.

[44] *Id.*

[45] *Id*. at 13.

[46] *Id.*

7

nothing it did prevented Plaintiff from pursuing a cause of action.[47]

Defendant also cites the Louisiana Supreme Court's decision in *Prevo v. State* in support of its argument that this Court's November 19, 2021 Order was correct.[48] Defendant argues that Louisiana courts have found that "plaintiffs are charged with investigating whether they have a claim, even when they rely on the assurance of seemingly reliable authority figures."[49]

Additionally, Defendant argues that amending the judgment would result in, rather than avoid, manifest injustice.[50] Defendant contends that the evidence Plaintiff relies on was known throughout discovery, and that Plaintiff could have sought reconsideration of the Court's order under Rule 54(b) prior to trial.[51] Defendant argues that all of the witness testimony Plaintiff relies on were deposed in this matter, and all of the email that were presented as exhibits to the jury were produced during discovery. Therefore, Defendant contends that there was no evidence learned at trial that was not available to Plaintiff prior to trial.[52] Additionally, Defendant argues that had Plaintiff's claims for damages prior to May 5, 2018 been part of the trial, Defendant would have presented additional evidence that was not put before the jury at trial.[53] Lastly, Defendant argues that "[t]he only evidence addressing the dismissed claims is an unauthenticated and unattested report of an expert witness submitted with Plaintiff's motion," and therefore it would be

---

[47] *Id.*

[48] *Id.* at 13 (citing 2015-0823 (La. 2015); 187 So. 3d 395, 398–99).

[49] *Id.* at 14.

[50] *Id.* at 15.

[51] *Id.*

[52] *Id.* at 16.

[53] *Id.*

"manifestly unfair now to unwind the Court's correctly decided" order.[54]

### III. Legal Standard

Plaintiff asserts that under Federal Rule 54(b), the Court can reconsider a prior interlocutory ruling "for any reason it deems sufficient," even in the absence of new evidence or a change in the law.[55] However, Rule 54(b) provides that "any order . . . that adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties . . . may be revised at any time *before the entry of a judgment* adjudicating all the claims and all the parties' rights and liabilities."[56] Although Plaintiff's motion purports to be one for "revision" of the Court's November 19, 2021 interlocutory order, the Court has since entered a judgment in this case.[57] Thus, Plaintiff's motion asking the Court to limit its earlier ruling and revive Plaintiff's claims for certain damages would necessarily require an alteration of the Court's final judgment. Thus, Plaintiff's motion must be considered under the Rule 59(e) standard governing motions to alter a judgment.[58]

Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."[59] "[A] motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly

---

[54] *Id.* at 17.

[55] Rec. Doc. 97-1 at 5.

[56] Fed. R. Civ. P. 54(b) (emphasis added).

[57] Rec. Doc. 94.

[58] Even assuming that Rule 54(b) governs the instant motion, the Court would still deny the motion for the same reasons discussed herein.

[59] Fed. R. Civ. P. 59(e).

discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued."[60] In deciding motions under Rule 59(e), courts in this district consider four factors: (1) whether the movant demonstrates the motion is necessary to correct manifest errors of law or fact upon which the judgment is based; (2) whether the movant presents new evidence; (3) whether the motion is necessary in order to prevent manifest injustice; and (4) whether the motion is justified by an intervening change in the controlling law.[61] However, "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly."[62]

## IV. Analysis

In the instant motion, Plaintiff asks the Court to modify its November 19, 2021 Order and Reasons to "limit its application to the 2009–2013 period associated with the written 2009 Subcontract."[63] The November 19, 2021 Order and Reasons found that: (1) Plaintiff's claims were subject to a three-year prescriptive period and (2) that all claims accruing prior to May 5, 2018 were prescribed.[64] In other words, the Court ruled that all claims for damages sustained during the parties' relationship between 2009 and May 5, 2018 were prescribed. Plaintiff now asks the Court to limit that finding to 2009–2013, and thus find that claims between 2014 and May 5, 2018 are not prescribed.

---

[60] *Rosenblatt v. United Way of Greater Houston,* 607 F.3d 413, 419 (5th Cir. 2010) *(quoting Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).

[61] *See, e.g.*, *Castrillo v. Am Home Mortg. Servicing, Inc.*, No. 09-4369, 2010 WL 1424398 at *3–4 (E.D. La. Apr. 5, 2010) (Vance, J.).

[62] *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

[63] Rec. Doc. 97 at 2, 11.

[64] Rec. Doc. 27.

The Court notes at the outset that it is unclear precisely what relief Plaintiff seeks. The jury was instructed not to consider any damages accruing prior to May 5, 2018, and therefore the jury has not made any finding as to damages between 2014 and 2018. Plaintiff does not specify whether it asks the Court to grant a new trial to allow a jury to consider these damages, or whether it asks the Court to alter the judgment to reflect those damages based on calculations provided by Plaintiff's expert in an attachment to Plaintiff's motion. If Plaintiff is making the latter request, it cites no authority to support the Court's authority to alter the judgment to include damages that were neither presented to nor found by the jury. Ultimately, for the reasons explained below, the Court need not alter the judgment to reflect these damages nor grant a new trial because Plaintiff's motion fails on the merits.

As discussed above, the Court found that Plaintiff's claims were subject to a three-year prescriptive period.[65] Plaintiff does not seek reconsideration of that conclusion here. Because Plaintiff did not file this lawsuit until May 5, 2021,[66] all claims accruing prior to May 5, 2018 are prescribed unless an exception applies. Where, as here, prescription is evident on the face of the pleadings, the plaintiff has the burden to show the action has not prescribed.[67]

Under the doctrine of *contra non valentem*, the applicable prescriptive period may be interrupted where one of four factual circumstances are present:

(1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
(2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
(3) where the [defendant] himself has done some act effectually to prevent the [Plaintiff] from availing himself of his cause of action; or

---

[65] Rec. Doc. 27 at 16.

[66] Rec. Doc. 1-2.

[67] *Carter v. Haygood*, 2004-0646 (La. 1/19/05), 892 So. 2d 1261, 1267.

11

(4) Where the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant.[68]

The Louisiana Supreme Court has stated that the third category is implicated only when "(1) the defendant engages in conduct which rises to the level of concealment, misrepresentation, fraud or ill practice; (2) the defendant's actions effectually prevented the plaintiff from pursuing a cause of action; and (3) the plaintiff must have been reasonable in his or her inaction."[69] In other words, the doctrine "will not exempt a plaintiff's claim from running if his ignorance is attributable to his own willfulness, neglect, or unreasonableness."[70]

In the Court's November 19, 2021 Order and Reasons, the Court explained that "[e]ven assuming that Defendant's failure to disclose the CPI increases rises to the level of concealment, misrepresentation, fraud, or ill practice, Plaintiff cannot meet the other two requirements necessary to invoke the third category of *contra non valentem*."[71] The Court further explained that because the CPI is measured by a public report released by the Department of Labor, and Plaintiff did not take any action to determine whether it was entitled to a CPI increase each year, Defendant's failure to disclose that it was receiving CPI increases did not prevent Plaintiff from availing itself of its cause of action.[72] The Court similarly concluded that Plaintiff's claims that Defendant failed to pay the $225 rate which accrued prior to May 5, 2018 were prescribed.

In the instant motion, Plaintiff argues that Defendant "induced [Plaintiff] into inaction"

---

[68] *Renfroe v. State ex. Rel. Dept. of Transp. and Dev.*, 2001-1646 (La. 2/26/02); 809 So. 2d 947, 953.

[69] *Marin v. Exxon Mobil Corp.*, 09-2368, p. 23 (La. 10/19/10); 48 So. 3d 234, 252 (internal citations omitted).

[70] *Able v. City of New Orleans*, 14-0186, p. 10–12 (La. App. 4 Cir. 9/17/14); 150 So. 3d 361, 368 (quoting *Dominion Exploration & Prod., Inc. v. Waters*, 07-0386, p. 14 (La. App. 4 Cir. 11/14/07); 972 So. 2d 350, 360)

[71] Rec. Doc. 27 at 18.

[72] *Id.* at 19.

with respect to asserting its rights earlier because Defendant "continued to promise [Plaintiff] that a written contract was forthcoming."[73] Plaintiff contends that the evidence at trial demonstrated that Defendant "actively lulled [Plaintiff] into the belief its rights would be protected and recognized by the promised written subcontract."[74] The Court notes that this is a slightly different argument than what Plaintiff asserted in opposition to Defendant's motion to dismiss. In opposition to the motion to dismiss, Plaintiff argued that it could not avail itself of its cause of action because Defendant did not inform Plaintiff that it was receiving CPI increases from Jefferson Parish, and thus Plaintiff did not know of its cause of action against Defendant.[75] In the instant motion, Plaintiff argues that it was lulled into not asserting its cause of action because Defendant's representations made Plaintiff believe that "its rights would be protected and recognized by the promised written subcontract."[76]

To begin, a motion to alter the judgment under Rule 59(e) should not be used "to raise arguments which could, and should, have been made before the judgment issued."[77] Although Plaintiff suggests that its arguments are based on the "critical evidence adduced at trial,"[78] the exhibits used at trial were available to Plaintiff prior to trial, and all of the fact witnesses were deposed prior to trial. Thus, Plaintiff could have moved for reconsideration of the Court's November 19, 2021 Order and Reasons prior to the trial and judgment in this matter.

---

[73] Rec. Doc. 97-1 at 6.

[74] *Id.* at 8.

[75] Rec. Doc. 21 at 10–11.

[76] Rec. Doc. 97-1 at 8.

[77] *Rosenblatt v. United Way of Greater Houston,* 607 F.3d 413, 419 (5th Cir. 2010) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).

[78] Rec. Doc. 97-1.

In any event, the Court disagrees that this evidence warrants reconsideration of the November 19, 2021 Order and Reasons. As discussed above, this category of *contra non valentem* applies when "(1) the defendant engages in conduct which rises to the level of concealment, misrepresentation, fraud or ill practice; (2) the defendant's actions effectually prevented the plaintiff from pursuing a cause of action; and (3) the plaintiff must have been reasonable in his or her inaction."[79] Plaintiff argues as follows:

> Now that the full facts have been revealed and Waste Connections' intentional, harmful conduct has been pulled fully into the light, it is clear that Waste Connections actively impeded Metro from pursuing its rights by (1) withholding annual notices of rate change from Jefferson Parish; (2) falsely claiming under oath that Waste Connections had to request CPI rate increases from Jefferson Parish in order to obtain same, and (3) acknowledging the obligations of the oral agreement by promising to provide a written contract including those terms in the future.[80]

Even assuming that this conduct constituted misrepresentation or ill practice, Plaintiff cannot demonstrate that this conduct "effectually prevented the plaintiff from pursuing a cause of action." As explained in the November 19, 2021 Order and Reasons, Plaintiff had the notice necessary to avail itself of its cause of action because CPI changes are publicly reported by the Department of Labor.[81] Furthermore, it is beyond dispute that Plaintiff knew it was being paid $165 per haul rather than $225. That Defendant made representations that a written contract would be provided has no bearing on whether Defendant prevented Plaintiff from pursuing its cause of action as none of the evidence at trial suggested that Defendant ever represented to Plaintiff that the written contract would contemplate reimbursing Plaintiff for past CPI increases and rate adjustments that Plaintiff had not received. Therefore, Plaintiff has not demonstrated that Defendant's conduct

---

[79] *Marin v. Exxon Mobil Corp.*, 09-2368, p. 23 (La. 10/19/10); 48 So. 3d 234, 252 (internal citations omitted).

[80] Rec. Doc. 97-1 at 2.

[81] Rec. Doc. 27 at 19.

"effectually prevented" Plaintiff from pursuing a cause of action against Defendant.

Plaintiff also argues that its claims for damages between 2014 and 2018 are not prescribed based on a wholly new argument not raised at earlier stages of these proceedings. Plaintiff argues that "tacit or express renunciation or acknowledgment of the benefits of prescription interrupts prescription."[82] It is not clear whether Plaintiff is asserting that the prescriptive period was interrupted by acknowledgement or by renunciation. Therefore, the Court will address both.

Acknowledgement and renunciation "differ in both substance and legal effect."[83] Louisiana Civil Code article 3464 provides that "[p]rescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe."[84] The Louisiana Supreme Court has explained that acknowledgment "is the recognition of the creditor's right or obligation that halts the progress of prescription before it has run its course."[85] "In legal effect, acknowledgment interrupts prescription and erases the time that has accrued, with prescription recommencing anew from the date of interruption."[86] "Acknowledgement sufficient to interrupt prescription may be express or tacit and take several forms. It may be made in writing, by partial payment, by payment of interest or pledge."[87] However, "once prescription has accrued, it can no longer be interrupted either by acknowledgment or suit."[88] Instead, "once prescription accrues, it may be renounced by

---

[82] Rec. Doc. 97-1 at 8.

[83] *Lima v. Schmidt*, 595 So. 2d 624, 631 (La. 1992).

[84] La. Civ. Code art. 3464.

[85] *Lima*, 595 So. 2d at 631.

[86] *Id.*

[87] *Jackson v. Hicks*, 49,199 (La. App. 2 Cir. 8/13/14); 147 So. 3d 283, 286.

[88] *Setton Marine, Inc. v. Great Lakes Dredge & Dock Co.*, 1995-0046 (La. App. 4 Cir. 6/7/95); 657 So. 2d 537, 539.

those in whose favor it has advantaged."[89]

Renunciation "is the technical term designating the abandonment of rights derived from prescription that has accrued."[90] "Renunciation obliterates the effect of prescription that has run."[91] "Because of these differences, renunciation is subject to more stringent requirements than acknowledgment."[92] "Renunciation may be express or tacit. Tacit renunciation results from circumstances that give rise to a presumption that the advantages of prescription have been abandoned."[93]

To begin, this is a new argument that was not raised in opposition to the motion to dismiss nor any time prior to the judgment in this case. As discussed above, Rule 59(e) should not be used "to raise arguments which could, and should, have been made before the judgment issued."[94] In any event, Plaintiff has not established acknowledgment or renunciation.

As discussed above, acknowledgment only applies to interrupt a prescriptive period that has not yet run. As discussed in this Court's November 19, 2021 Order and Reasons, the prescriptive period for Plaintiff's claims ran on May 5, 2018. In order to interrupt this prescriptive period, therefore, Plaintiff must point to some acknowledgment by Defendant prior to that date. Plaintiff does not identify precisely what conduct amounted to an "acknowledgment" sufficient to interrupt prescription. Plaintiff states only that Defendant's "active deceit in regard to a new 2014

---

[89] *Id.*

[90] *Lima*, 595 So. 2d at 631.

[91] *Id.*

[92] *Id.*

[93] La. Civ. Code art. 3450.

[94] *Rosenblatt v. United Way of Greater Houston,* 607 F.3d 413, 419 (5th Cir. 2010) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).

subcontract functions as a tacit renunciation/acknowledgment of the benefits of prescription."[95]

The Louisiana Supreme Court has recognized that prescription can be interrupted by tacit acknowledgement:

> A tacit acknowledgment occurs when a debtor performs acts of reparation or indemnity, makes an unconditional offer or payment, or lulls the creditor into believing he will not contest liability. Conversely, mere settlement offers or conditional payments, humanitarian or charitable gestures, and recognition of disputed claims will not constitute acknowledgments. These generalizations are reflected in the host of cases addressing the issue of what constitutes a tacit acknowledgment. Our courts have added to the above generalizations other criteria that evidence an acknowledgment, including undisputed liability, repeated and open-ended reassurances of payment, and continuous and frequent contact with the creditor throughout the prescriptive period. Conversely, our courts have recognized that mere recognition of a disputed claim, conditional payments, and settlement or compromise offers or negotiations do not evidence an acknowledgment.

Plaintiff does not point to any specific conduct in support of its claim but rather relies on Defendant's supposed "active deceit in regard to a new 2014 subcontract." To be sure, there was evidence at trial that Defendant reassured Plaintiff that a written contract would be provided. However, Plaintiff does not explain how Defendant's representations that a written contract would be provided amounts to an acknowledgment of past debts allegedly owed.

Additionally, even assuming that any of Defendant's conduct could be construed as an acknowledgment, Plaintiff has not carried its burden of demonstrating that claims for damages between 2014 and 2018 have not prescribed.[96] As discussed above, "acknowledgment interrupts prescription and erases the time that has accrued, with prescription recommencing anew from the date of interruption."[97] The emails Plaintiff presented at trial as evidence that Defendant reassured

---

[95] Rec. Doc. 97-1 at 10.

[96] *Southern Chiropractic and Sports Rehabilitation Center, Inc. v. Coleman*, No. 2007-1585 (La. App. 1 Cir. 6/30/08); 2008 WL 2582496 at *3 ("[I]f a claim is prescribed on the face of the pleadings, the burden is on the claimant to show that prescription has not tolled because of an interruption or a suspension of prescription.

[97] *Id.*

Plaintiff that a contract was coming were from 2013 and 2014. Because Plaintiff's claims are subject to a three-year prescriptive period, even assuming that this conduct "interrupted" the prescriptive period, the claims would have prescribed three years later. Because Plaintiff did not file suit until May 5, 2021, any alleged interruption of the prescriptive period here would not have saved Plaintiff's claims.

Plaintiff also argues that Defendant's conduct amounted to "tacit renunciation . . . of the benefits of prescription."[98] As discussed above, renunciation "is the technical term designating the abandonment of rights derived from prescription that has accrued."[99] "Renunciation obliterates the effect of prescription that has run."[100] Louisiana Civil Code article 3450 provides that "[r]enunciation may be express or tacit. Tacit renunciation results from circumstances that give rise to a presumption that the advantages of prescription have been abandoned."[101] The Louisiana Supreme Court has explained that renunciation "must be 'clear, direct, and absolute and manifested by words or actions of the party in whose favor prescription has run,'"[102] and that renunciation "requires a new promise to pay the debt, as '[a] new obligation binding on the debtor is created when a promise to pay is made after prescription has accrued.'"[103] Additionally, renunciation "is subject to more stringent requirements than acknowledgement."[104]

Here, Plaintiff points to no evidence of circumstances that "give rise to a presumption that

---

[98] Rec. Doc. 87-1 at 10.

[99] *Lima*, 595 So. 2d at 631.

[100] *Id.*

[101] La Civ. Code art. 3450.

[102] *Lima*, 595 So. 2d at 631 (quoting *Queen v. W & W Clarklift, Inc.*, 537 So. 2d 1214 (La. App. 4 Cir. 1989)).

[103] *Id.*

[104] *Id.*

the advantages of prescription have been abandoned."[105] Again, Plaintiff argues only that Defendant's "active deceit in regard to a new 2014 subcontract functions as a tacit renunciation."[106] However, Plaintiff has not presented any evidence that Defendant offered to pay the amounts owed after the prescriptive period ran.[107] Therefore, Plaintiff has not carried its burden of demonstrating that Defendant renounced prescription.

## V. Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's "Rule 54(b) Motion for Revision of Interlocutory Judgment"[108] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this  28th  day of September, 2022.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[105] La Civ. Code art. 3450.

[106] Rec. Doc. 97-1 at 10.

[107] *See Slaughter v. Arco Chemical Co.*, No. 2005-0657 (La. App. 4 Cir. 4/26/06); 931 So. 2d 387, 393 ("Even if we were, for purposes of argument only, to find that the check and cover letter constituted an acknowledgement by ARCO, the facts still fail to meet the higher standard required for "renunciation," as there is no language in either the check or the cover letter that could be construed as a new promise to pay by ARCO or a new promise to litigate."); *Neese v. Papa John's Pizza*, No. 2010-15 (La. App. 5 Cir. 6/29/10); 44 So. 3d 321, 329 (finding that the defendant did not renounce the benefits of prescription with respect to the plaintiff's claims for disability benefits by sending a check because "[t]here [was] no evidence in the record that [the defendants] intended [a check sent after the prescription period] to be a new promise to pay [disability] benefits or that [the defendants] clearly and directly intended to renounce prescription.").

[108] Rec. Doc. 97.